UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jaroslaw Waskowski, on behalf of himself and all others similarly situated,

Plaintiff,

v. Case No. 11-12979

State Farm Mutual Automobile Insurance Company,

Sean F. Cox
United States District Court Judge

Defendant.
_______________________________/

**OPINION & ORDER**

Plaintiff Jaroslaw Waskowski ("Plaintiff") brings this putative class action against his no-fault automobile insurer asserting a breach of contract claim based on reimbursement of his healthcare-related travel expenses. The matter is currently before the Court on the following motions filed by the parties: 1) Plaintiff's Motion for Class Certification (Docket Entry No. 63); 2) Defendant's Motion for Summary Judgment (Docket Entry No. 64); 3) Defendant's Motion seeking to exclude Plaintiff's expert report (Docket Entry No. 66); 4) Defendant's Motion to Strike Statement filed by Plaintiff (Docket Entry No. 82); and 5) Defendant's Motion to Remove Case from Mediation (Docket Entry No. 80). The motions have been extensively briefed by the parties and the Court finds that oral argument would not aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motions will be decided upon the briefs.

As explained more fully below, the Court shall DENY Defendant's motion seeking to

strike Plaintiff's statement of facts. In order to prevail on his breach of contract claim, it is Plaintiff's burden to establish, with a reasonable degree of certainty, that he actually incurred travel expenses that were greater than the amount he was reimbursed by Defendant. In response to Defendant's Motion for Summary Judgment, Plaintiff relies on a report from his proposed expert. In addition to being untimely, that expert report is not based on sufficient underlying facts or data, but rather, on speculation. The Court shall therefore exclude Plaintiff's expert report. Without that report, Plaintiff has virtually no evidence in support of his individual claim and certainly not sufficient evidence to create a genuine issue of material fact for trial. As a result, this Court shall grant Defendant's Motion for Summary and dismiss Plaintiff's individual claim.

The Court shall also deny Plaintiff's motion seeking class certification because Plaintiff is the only named Plaintiff and, if his own claim is dismissed, there is no named plaintiff who would be adequate to represent the proposed class. In addition, this Court concludes that it is readily apparent that the Motion for Class Certification should be denied in any event because the claims of the proposed class members are inherently individualized and are therefore not appropriate for class treatment.

Finally, the Court shall deny as moot State Farm's motion seeking to remove the case from mediation.

## BACKGROUND

### A. Procedural History

On or about June 15, 2011, Plaintiff, filed this putative class action on behalf of himself and others similarly situated, in Macomb County Circuit Court. Plaintiff's Complaint asserts

claims against his automobile insurer, Defendant State Farm Mutual Automobile Insurance Co. ("Defendant" or "State Farm") and two of its employees, Terri Page and Pam Marsh. Plaintiff's Complaint asserts the following claims: 1) "Breach of Contract" (Count I); and 2) "Fraud" (Count II). Defendants removed the action to this Court.

Prior to completion of discovery in this matter, Defendants filed a Motion for Judgment on the Pleadings. In an Opinion & Order issued on January 25, 2012 (Docket Entry No. 25), this Court ruled on that motion. This Court's Opinion & Order stated the following:

> Plaintiff's overall contention is that State Farm uses an unreasonable rate to reimburse its insureds for mileage expenses incurred for the purposes of receiving medical treatment. Plaintiff's complaint alleges breach of contract and fraud, and defines the putative class as follows:
>
>> All individuals who are insureds of State Farm in Michigan or otherwise covered by State Farm for first party no fault benefits, and for whom State Farm has paid and/or continues to pay medical mileage for automobile related injuries, at a rate in accordance with State Farm's policy of adopting the IRS medical and moving mileage rate, excluding State Farm's directors, officers, and employees, and excluding Plaintiffs' attorney and staff.
>
> (Complaint at ¶ 7).
>
> According to Plaintiff's complaint, and the undisputed documentary evidence submitted by Defendants, the underlying facts are as follows.
>
> On December 23, 2009, Plaintiff was involved in an automobile accident during which Plaintiff incurred serious injuries, including bulging discs in his cervical spine and lumbar spine, a fractured sternum, fractured ribs, and a torn rotator cuff. At the time of his accident, Plaintiff was covered by a no fault automobile insurance policy issued by State Farm.
>
> Under the No Fault Act, personal protection insurance benefits include "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." M.C.L. § 500.3107(a). It is undisputed that mileage

> incurred for medical treatment is an allowable expense to be paid by the insurer under the No Fault Act. *See Davis v. Citizens Ins. Co. of America*, 195 Mich.App. 323, 328 (1992).
>
> In reimbursing its insureds for mileage incurred for medical treatment, State Farm utilizes the Internal Revenue Service's ("IRS") medical and moving mileage rate to calculate an insured's mileage expense, rather than the IRS's business standard mileage rate. (Complaint at ¶ 9). Generally, the IRS's business standard mileage rate is considerably higher than the IRS's medical and moving mileage rate.

(January 25, 2012 Opinion & Order at 2 -4 ).

Notably, this Court's January 25, 2012 Opinion & Order: 1) dismissed all claims against Terri Page and Pam Marsh; and 2) dismissed Plaintiff's fraud claims. (Docket Entry No. 25). That leaves Plaintiff's breach of contract claim against Defendant State Farm as the only claim in this action.

Defendants' Motion for Judgment on the Pleadings, however, had also asked the Court to dismiss Plaintiff's breach of contract claim against State Farm. This Court declined to do so and explained:

> Plaintiff's insurance agreement with State Farm provides that State Farm "will pay, subject to provisions of the ***No-Fault Act***," for allowable expense benefits. (Policy at 10, Def's Br., Ex. D) (emphasis in original). Plaintiff asserts that, by using the IRS's medical and moving mileage rate rather than its business standard mileage rate, State Farm is not fully reimbursing its insureds for expenses incurred for medical treatment because the medical and moving mileage rate does not reflect the true costs of operating a vehicle. . . Plaintiff therefore asserts that by violating the No-Fault Act, State Farm has breached its contract with Plaintiff.
>
> The burden of proof of whether a plaintiff is entitled to recover no-fault benefits lies with the Plaintiff. *Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 49 (1990). In order for a plaintiff to recover no-fault benefits from an insurer, the plaintiff must prove: 1) that he or she incurred allowable expenses; 2) the

> expenses were reasonably necessary to recover from injuries resulting from the automobile accident; and 3) the amount of the expense was reasonable. *Id*. at 49-50 (citing *Nelson v. DAIIE,* 137 Mich.App. 226, 231 (1984)). Section 3107 requires that an insured must be reimbursed only for those expenses *actually incurred*. *Nasser*, 435 Mich. at 50.
>
> State Farm does not dispute that transportation charges are reasonable expenses for which it must reimburse its insureds. State Farm first contends, however, that Plaintiff's complaint does not allege that Plaintiff actually incurred reasonable travel expenses that exceed the IRS medical and moving rate. In support of its position that Plaintiff's case should be dismissed on the pleadings, State Farm directs the Court to *Neumann v. State Farm Mutual Automobile Ins. Co.*, 180 Mich.App. 479 (1989).

(*Id*. at 6-7). In denying State Farm's Motion for Judgment on the Pleadings as to the breach of contract claim, this Court found that State Farm's reliance on *Neumann* was misguided because, in that case, the motion for summary disposition was brought after the plaintiff had been afforded

seven months of discovery to obtain evidence in support of his position that his actual travel expenses exceeded the amount reimbursed by State Farm, but the plaintiff failed to provide such evidence. In the motion before this Court, Defendant sought judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c), and the Court had to construe the Complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations as true. (*Id*. at 8-9). The Court concluded that Plaintiff had *sufficiently alleged* that he actually incurred travel expenses greater than the amount reimbursed by State Farm. (*Id*. at 9). This Court stated that "[a]lthough State Farm is under no obligation to adopt a particular method of calculation for medical mileage expenses, Plaintiff must be afforded the opportunity for discovery *to determine whether his actual travel expenses incurred exceeded the medical and moving rate used by State*

*Farm*." (*Id.* at 9) (emphasis added).

The Court therefore declined to dismiss Plaintiff's breach of contract claim and allowed continued[1] discovery as to that claim.

On May 8, 2012, this Court issued a Scheduling Order (Docket Entry No. 36) that provides, among other things, that: 1) all witnesses to be called at trial shall be listed by October 5, 2012; 2) all discovery shall be completed by November 5, 2012; and 3) no motions shall be filed after December 7, 2012.

On October 5, 2012, Plaintiff filed a Witness List that listed "Nitin Paranjpe, Ph.D.," as an economics expert and Elliot S. Flood, J.D. as a "possible insurance expert." (Docket Entry No. 47).

On December 7, 2012, Plaintiff filed a Motion for Class Certification (Docket Entry No. 63). On that same day, December 7, 2012, State Farm filed a Motion for Summary Judgment (Docket Entry No. 64) and a motion seeking to exclude Plaintiff's expert (Docket Entry No. 66). State Farm later filed a Motion to Remove Case from Mediation (Docket Entry No. 80) and a Motion to Strike Statement filed by Plaintiff (Docket Entry No. 82).

**B. Factual Background**

Plaintiff was involved in an automobile accident on December 23, 2009. (Def.'s Stmt. at ¶1; Pl.'s Stmt. at ¶ 1). (*Id*. at ¶ ). At the time, Plaintiff was covered under an automobile insurance policy issued by State Farm. (*Id*. at ¶¶ 3-4). Thereafter, Plaintiff filed a claim with State Farm. State Farm reimbursed medical mileage with respect to Plaintiff's claim. (*Id*. at ¶

[1]On October 25, 2011 (Docket Entry No. 22), this Court ordered the parties to serve their initial disclosures by November 1, 2011, and allowed the parties to begin discovery.

7).

State Farm pays reasonable travel costs that were actually incurred by a claimant. (Collins Dep. at 110).

When a claimant provides no proof of actual travel costs, State Farm pays mileage at a set rate, the I.R.S. medical and moving mileage rate. (Collins Dep. at 51-52 & 84-85). Thus, State Farm uses the I.R.S. medical and moving rate as a "floor" or default rate for reimbursing expenses for medical transportation. (*Id*.). It is undisputed that in 2010 and 2011, the I.R.S. medical and moving rates were 16.5 and 19 cents, respectively. (Def.'s Stmt. at ¶17; Pl.'s Stmt. at ¶ 17).

If a claimant seeks travel costs in excess of that floor rate, they have to submit documentation of their actual travel expenses. (*Id*.) An insured may submit any expense that the insured feels was incurred as a result of operating a car for the purpose of receiving medical treatment. (Collins Dep. at 55-56). State Farm considers each such claim on its own merits. (*Id*.).

Since his December 23, 2009 accident, Plaintiff has not driven himself to or from any visits for medical treatment. (Def.'s Stmt. at ¶18; Pl.'s Stmt. at ¶ 18). Plaintiff's adult daughters, Margaret Jeziorowski and Kamila Waskowska, drove Plaintiff to and from medical treatment visits. (Def.'s Stmt. at ¶19; Pl.'s Stmt. at ¶ 19). They used the following three vehicles to transport Plaintiff to and from medical treatment visits during the relevant time period: 1) a Volvo C70; 2) a Chevy Cobalt; and 3) a Mazda 6 ("the Mazda"). (Def.'s Stmt. at ¶ 27; Pl.'s Stmt. at ¶ 27).

On December 31, 2009, State Farm sent Plaintiff a letter (Exhibit 10 to Def.'s Stmt.),

advising that once his deductible of $300.00 has been met, his coverage provided for reimbursement of various kinds of reasonable and necessary expenses, including "Medical mileage to and from treatment appointments, which is reimbursable at 24 cents per mile unless you provide proof of actual expenses. (For more information, please see page 3)." (*Id*. at 1). Page three of that same letter states:

> MEDICAL MILEAGE REIMBURSEMENT
>
> We appreciate the opportunity to service your Personal Injury Protection claim. In addition to reimbursement for covered medical and certain other expenses, this coverage provides medical mileage reimbursement benefits.
>
> Enclosed is a medical mileage reimbursement form for your use. We will reimburse you 24 cents per mile for mileage costs you incur to obtain treatment for the care, recovery, or rehabilitation of your accident-related injuries, plus your actual costs of any parking fees and tolls.
>
> *Twenty-four cents per mile is the standard rate per IRS for use of your car for medical reasons. To submit a claim for medical mileage, please complete the enclosed medical mileage form and return it to us at your convenience. Please provide receipts for the incurred parking and tolls.*
>
> *If you want to seek reimbursement in excess of 24 cents per mile, you can submit receipts to document reasonable expenses, in addition to completing the enclosed medical mileage form. While it is not practical to provide you with a complete list of what might be compensable, examples could include items such as reasonable transportation fees, gas, oil, parking, tolls, or other expenses arising out of the use of your vehicle to obtain treatment.*
>
> *In order to be eligible for medical mileage reimbursement under the Personal Injury Protection coverage and according to the terms of your car policy, please be sure to submit receipts with your form.*
>
> If you have any questions or would like to discuss your medical mileage reimbursement benefits, please contact me at the telephone number listed below.

(*Id*. at 3) (emphasis added).

On January 12, 2010, Plaintiff sent a letter to State Farm that stated, in pertinent part, that Plaintiff was claiming "Mileage at 48.5 cents per mile." (Ex. 11 to Def.'s Stmt.). That letter did not include any enclosures. (Def.'s Stmt. at ¶ 113; Pl.'s Stmt. at ¶ 113).

On January 14, 2010, State Farm sent Plaintiff another letter stating that if he is claiming more than the floor rate of 16.5 cents per mile, which had previously been 24 cents per mile, he must submit receipts with his claim forms. (Ex. 12 to Def.'s Stmt.).

Thereafter, in support of his claims to State Farm, Plaintiff submitted one receipt for an oil change and one receipt for a fuel sale.

## ANALYSIS

### I. State Farm's Motion For Summary Judgment, Motion To Strike Statement, And Motion To Preclude Expert Report.

This Court will address State Farm's Motion for Summary Judgment before considering class certification. Doing so, however, brings two other motions filed by State Farm into play: 1) its motion seeking to exclude Plaintiff's expert report, which Plaintiff relies on in opposing the summary judgment motion; and 2) its motion seeking to strike Plaintiff's statement of material facts.

The motion seeking to strike Plaintiff's statement of material facts, because it violates this Court's practice guidelines in various ways, can be disposed of easily. This Court shall deny the motion because the Court can still assess the record evidence submitted by the parties without striking this document.

Next, State Farm asserts that Plaintiff's proposed expert (Nitin Paranjpe, Ph.D.) should

be precluded from testifying at trial, and the Court should exclude his expert reports, for several reasons. In opposing State Farm's Motion for Summary Judgment, Plaintiff relies on an expert report by Dr.Paranjpe. Before considering this motion, however, this Court shall consider what Plaintiff must establish to prevail on his breach of contract claim.

**A. To Prevail On His Breach Of Contract Claim, It is Plaintiff's Burden To Establish, "With A Reasonable Degree Of Certainty," That He Actually Incurred Travel Expenses Above The Rate He Was Reimbursed By State Farm**

As this Court noted in its January 25, 2012 Opinion & Order, Plaintiff has the burden of proving that he is entitled to recover no-fault benefits. (1/25/12 Opinion & Order, citing *Nasser v. Auto Club Ins. Ass'n,* 435 Mich. 33, 49 (1990)). And in order for Plaintiff to recover no-fault benefits from State Farm, he must prove: 1) that he actually incurred allowable expenses; 2) the expenses were reasonably necessary to recover from injuries resulting from the automobile accident; and 3) the amount of the expense was reasonable. *Id*.

In *Neumann*, like the situation presented here, the named plaintiff: 1) was involved in an automobile accident and suffered physical injuries; and 2) was insured by State Farm, who reimbursed him for his medical expenses, including travel costs incurred in obtaining medical treatment. As to the travel costs, State Farm policy is to reimburse claimants for the actual costs incurred, assuming the costs are documented and are otherwise reasonable. Where the claimant provides no proof of actual travel costs, State Farm pays at a set rate, the I.R.S. medical and moving mileage rate. That is the "floor rate" that State Farm uses. If a claimant seeks more than that rate, they have to submit proof of their actual travel expenses.

The named plaintiff in *Neumann*, like Plaintiff here, filed suit against State Farm, arguing

that State Farm should use the I.R.S. business standard rate, rather than the I.R.S. medical and moving mileage rate. That is, these plaintiffs would like the court to set the rate to be used to calculate mileage and have State Farm pay damages based on that rate. As this Court recognized in its January 25, 2012 Opinion & Order, however, State Farm is under no obligation to adopt a particular method of calculation for medical mileage expenses. And the Michigan Court of Appeals made clear that a claimant like Plaintiff is only due those travel expenses *actually incurred*. Thus, in order to prevail on his breach of contract claim, *it is Plaintiff's burden to establish that he actually incurred travel expenses above the rate he was reimbursed by State Farm.* In this Court's April 13, 2012 Opinion & Order it stated that while Plaintiff "need not present evidence of 'to-the-penny' calculations of the mileage expenses he actually incurred," *he "must establish the mileage expenses he actually incurred 'with a reasonable degree of certainty.'"* (4/13/12 Opinion & Order) (citing *Neumann, supra*).

Seizing on certain language in this Court's April 13, 2012 Opinion & Order, however, Plaintiff's Counsel is under the belief that Plaintiff can proceed to trial if he can convince the Court that State Farm should use the I.R.S. business standard rate rather than the I.R.S. medical and moving rate in general. That is, for both Plaintiff as an individual claimant and for all of the putative class members, Plaintiff's Counsel would like this Court to rule that State Farm must use the higher rate – regardless of whether any claimant can show that he or she actually incurred expenses in excess of the rate paid by State Farm. (*See* Pl.'s Br., Docket Entry No. 71, at 7). The language that Plaintiff focuses on is:

> With regard to Plaintiff's breach of contract claim, the Court held, "Although State Farm is under no obligation to adopt a particular method of calculation for medical mileage expenses, Plaintiff must be afforded the opportunity for

> discovery to determine whether his actual travel expenses incurred exceeded the medical and moving rate used by State Farm." (1/25/12 Opinion at 9). *This ruling, however, does not limit Plaintiff from establishing a different rate is reasonable, whether through another standardized rate or otherwise."*

(4/13/12 Opinion & Order) (emphasis added). When read in the context of all the Court's other statements, it clear that Plaintiff cannot prevail on his breach of contract claim without establishing that he actually incurred travel expenses that exceeded the rate that was paid by State Farm. That is, Plaintiff cannot rely on an expert's opinions as to what is generally incurred by a person in Southeastern Michigan during a certain time period for travel expenses – he needs to show *that he actually incurred such expenses.* And he must establish the expenses he incurred with *a reasonable degree of certainty.*

**B. State Farm's Challenges To Plaintiff's Proposed Expert**

On December 7, 2012, State Farm filed its motion seeking to preclude the expert reports of Plaintiff's expert and preclude his trial testimony. It seeks to do so on several grounds including: 1) untimeliness of expert disclosures; and 2) that Dr. Paranjpe's report is not based on sufficient facts or data.

State Farm notes that it first became aware of Plaintiff's proposed Expert when Plaintiff filed his witness list on October 5, 2012, but that Plaintiff did not provide any expert disclosures at that time. Counsel for State Farm began requesting expert disclosures from Dr. Paranjpe, and seeking to depose him, as soon as it learned that Plaintiff planned to use him. (*See* Exs. 1-6 to State Farm's motion). Plaintiff finally agreed to have Dr. Paranjpe deposed on November 5, 2012 – which was the date by which all discovery had to be completed. Plaintiff provided Dr. Paranjpe's written report as the deposition began, thereby depriving State Farm's Counsel of the

ability to review and study the report to prepare for the deposition. Worse yet, in responding to Plaintiff's motion seeking to preclude Dr. Paranjpe's November 5, 2012 report, on December 26, 2012 – past the motion cutoff and after State Farm had already filed a Motion for Summary Judgment that addressed Dr. Paranjpe's initial report – Plaintiff filed a Supplemental Report. (*See* Ex. O to Pl.'s Br.). Accordingly, the Court finds State Farm's timeliness challenge to have merit.

Nevertheless, because the Court concludes that another ground for striking the expert report is even stronger, the Court shall address the challenge to Dr. Paranjpe's report as it not being based on sufficient facts or data.

"District court judges must determine whether an expert's testimony is both relevant and reliable when ruling on its admission." *Clay v. Ford Motor Company*, 215 F.3d 663, 667 (6th Cir. 2000). A trial judge's determinations regarding the admissibility of expert testimony are guided by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).

Rule 702 of the Federal Rules of Evidence governs testimony by experts and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) *the testimony is based on sufficient facts or data*;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. (emphasis added).

Under *Daubert,* the trial court acts as a "gatekeeper" that ensures that any and all scientific testimony or evidence admitted is not only relevant, but reliable.

A district court is not obligated to hold a *Dauber*t hearing (*see Clay v. Ford Motor Company,* 215 F.3d at 667; *Nelson*, 243 F.3d at 249) and this Court declines to do so here. A *Daubert* hearing is unnecessary here in light of the full briefing of the issues by the parties and the evidence submitted to date.

"It is the proponent of the testimony that must establish its admissibility by a preponderance of proof." *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert,* 509 U.S. at 592 n.10)).

State Farm's motion asserts that Dr. Paranjpe's "unreliable opinions are based almost exclusively on factual assumptions provide by Plaintiff's counsel that are unsupported, and frequently contradicted, by the actual facts developed in discovery." (Def.'s Br. at 1).

The Court agrees that Plaintiff has failed to meet his burden here, where it is clear that Dr. Paranjpe's proposed expert report is not based on sufficient facts or data.

Dr. Paranjpe's November 5, 2012 Expert Report consists of nine pages. (Ex. 8 to Def.'s Br.) Although three different cars were used to transport Plaintiff to and from medical appointments, Dr. Paranjpe was retained to look at the costs associated with just one of those – the Mazda. Dr. Paranjpe was retained "to calculate (a) the total cost/mile for the Mazda 6i owned by [Plaintiff] for the time period January 2010 through February 2011." (*Id*. at 3). Dr. Paranjpe's report – provided on the November 5, 2012 close of discovery – states that it is "preliminary and based on the information that I currently have." (*Id*.).

As State Farm accurately notes, "[l]acking actual facts necessary to conduct his analysis

of the Mazda 6, in forming his opinions Dr. Paranjpe instead resorted to assumptions, estimates, and representations from Plaintiff's counsel." (Def.'s Br. at 10).

For example, Dr. Paranjpe's report estimates an oil change cost per mile. (Dr. Paranjpe's Report at 7). Dr. Paranjpe testified that before preparing his report he: 1) did not speak to Plaintiff or either of his two daughters (Dr. Paranjpe Dep. at 21); 2) did not review any deposition transcripts in this case (Dr. Paranjpe Dep. 17-18); 3); and 3) had not been provided with any information regarding the cost of any oil changes performed on the Mazda or the number of oil changes performed. (Dr. Paranjpe Dep. 18). Nevertheless, in making his calculations, Dr. Paranjpe "*assumed*," based on a representation from Plaintiff's Counsel in a letter dated October 23, 2012,[2] that the oil for the Mazda was changed three times per year and that each oil change cost $40.00.[3]

The record evidence in this case, however, does not support those assumptions. Rather, the record evidence reflects that:

- Plaintiff testified that he did not know when any oil changes on the Mazda took place. (Pl.'s Dep. at 27).

- Plaintiff testified that he did not know how much any oil changes on the Mazda cost. (Pl.'s Dep. at 27).

- Margaret Jeziorowski testified that she could not recall any dates during the relevant time period when she had the oil changed on the Mazda; nor could she recall the number of times the oil was changed. (Jeziorowski Dep. at 12).

---

[2]*See* Docket Entry No. 66-11 at Pg ID 1417, wherein Plaintiff's Counsel states in a letter to Dr. Paranjpe that "We are advised that oil changes are done three times per year."

[3]The calculation also "estimates" the number of miles driven per year at 21,076, again based on representations by Plaintiff's Counsel.

- No receipts were produced by Plaintiff for any oil changes on the Mazda.

- One receipt for an oil change performed on another vehicle, the Chevy Cobalt, was produced in this action but that was for $33.79 – several dollars less than the $40.00 amount used by Dr. Paranjpe. (*See* Def.'s Ex. 14).

- Dr. Paranjpe testified that if less than the three oil changes assumed per year were actually performed, his estimated oil change cost per mile would decrease. He also testified that if any oil changes actually performed cost less than the assumed rate of $40.00, his estimated oil change cost per mile would decrease. (Dr. Paranjpe Dep. at 40).

Another example of the problem is illustrated by Dr. Paranjpe's report estimating a "tire cost" per mile. (Dr. Paranjpe's Report at 7). That estimate is based on information provided by Plaintiff's Counsel as to when the tires on the Mazda were changed and that they were changed at a cost of $600.00, as well as other estimates. But again, the record evidence does not support his assumptions:

- Plaintiff testified that he does not know when the tires on the Mazada were changed or at what cost. (Pl.'s Dep. at 27)

- Margaret Jeziorowski testified that she did not know how much was spent to service or replace tires on the Mazda (Jeziorowski Dep. at 14-15). She also testified that she is not aware of, and has not looked for, any receipts or documentation for expenses incurred as to the Mazada during the relevant period. (*Id.*).

This Court shall exclude Dr. Paranjpe's report and trial testimony because his report and calculations are not, as required by Rule 702 and *Daubert*, based on sufficient facts or data. *See Coffey v. Dowley Mfg., Inc.*, 89 Fed. Appx. 927 (6th Cir. 2003) (district court did not abuse its discretion in precluding proposed expert from testifying where the proposed expert's testimony was not based on sufficient facts); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir.

2000) ("An expert's opinion, where based on assumed facts, must have some support for those assumptions in the record.").

**C. Has Plaintiff Come Forward With Sufficient Evidence To Create An Issue Of Fact For Trial?**

Without the report from his proposed expert, Plaintiff has insufficient evidence to create an issue of fact for trial. Again, to prevail on his breach of contract claim, it is Plaintiff's burden to establish, "with a reasonable degree of certainty," that he actually incurred travel expenses above the rate that he was reimbursed by State Farm. While it would be possible to perform a calculation that could support the claim Plaintiff is asserting here, that calculation can only be made if the plaintiff has sufficient evidence of the expenses actually incurred. Here, however, Plaintiff has virtually no evidence regarding any expenses he actually incurred. Plaintiff and his two daughters who provided his transportation could not testify as to any of the details of the dates on which travel was provided, the cars used, the maintenance on the vehicles, etc. Indeed, Plaintiff has offered even less evidence than the plaintiff in *Neumann.*

At the end of the day, Plaintiff is essentially asking this Court to rule that State Farm must pay the I.R.S. business standard mileage rate rather than the I.R.S. medical and moving mileage rate that it uses as its default rate – regardless of whether a plaintiff can prove the travel expenses he actually incurred. But as this Court stated in its prior Opinion & Order, "State Farm is under no obligation to adopt a particular method of calculation for medical mileage expenses." That is, State Farm is not required by contract, statute, or otherwise, to use a particular method of calculation for medical mileage expenses.

Accordingly, the Court shall grant State Farm's Motion for Summary Judgment as to

Plaintiff's individual breach of contract claim.

## II. Plaintiff's Motion For Class Certification

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.C. 2541, 2548 (June 20, 2011). A "trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re American Medical Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. Nov. 10, 2011).

The party seeking class certification bears the burden of establishing that all prerequisites for class certification are satisfied. *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, __ F.3d __, 2011 WL 3524325 at *9 (6th Cir. 2011).

Under Rule 23(a), the party seeking certification must demonstrate, first, that: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interests of the class. "Second, the proposed class must satisfy at least one of the three requirements in Rule 23(b)." *Id.* "A failure on either front dooms the class." *Pilgrim*, 660 F.3d at 946.

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. *Wal-Mart Stores, Inc., supra*, at 2550 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The Rule's four requirements – numerosity,

commonality, typicality, and adequate representation – 'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Id.* (citations omitted).

If the party seeking certification demonstrates that the requirements of Rule 23(a) are met, then the Court must consider whether one of the three requirements in Rule 23(b) has been met.

Here, Plaintiff asserts that the requirements of Rule 23(b)(3) have been met. "Rule 23(b)(3) states that a class may be maintained where 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Wal-Mart Stores, Inc.,*131 S.C. at 2549 n.2. "Subdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the *more stringent requirement* that common issues 'predominate' over individual issues." *In re American Medical SYS., Inc*., 75 F.3d at 1084 (emphasis added).

Because the Court is granting State Farm's Motion for Summary Judgment and thereby dismissing Plaintiff's only remaining claim in this action, Plaintiff's Motion for Class Certification shall also be denied. This is because Plaintiff is the only named Plaintiff and if his claim is dismissed, there is no named plaintiff who would be adequate to represent the proposed class.

In addition, this Court concludes that it is readily apparent that the Motion for Class Certification should be denied in any event because the claims of the proposed class members are *inherently individualized* and are therefore not appropriate for class treatment.

### III. State Farm's Motion To Remove Case From Mediation

Finally, given the above rulings, the Court also concludes that State Farm's Motion to Remove Case from Mediation should be denied as moot.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that:

1) Defendant's Motion to Strike Statement filed by Plaintiff (Docket Entry No. 82) is DENIED;

2) Defendant's Motion seeking to exclude Plaintiff's expert report (Docket Entry No. 66) is GRANTED;

3) Defendant's Motion for Summary Judgment (Docket Entry No. 64) is GRANTED and Plaintiff's only remaining claim in this action shall be DISMISSED WITH PREJUDICE;

4) Plaintiff's Motion for Class Certification (Docket Entry No. 63) is DENIED; and

5) Defendant's Motion to Remove Case from Mediation is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 10, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 10, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager